WMG

FILED IN OPEN COURT
ON _5-19-2020_ ᶜᵖ
Peter A. Moore, Jr., Clerk
US District Court
Eastern District of NC

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CR-245-1D(2)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | INDICTMENT |
| | ) | |
| JOSHUA MATTHEW HOUCHINS | ) | |

The Grand Jury charges the following:

## INTRODUCTION

At all times material to this indictment,

1.    JOSHUA MATTHEW HOUCHINS was an individual who owned and operated various residential real estate development and renovation companies in Raleigh, North Carolina, and elsewhere.

2.    On or about October 20, 2014 HOUCHINS created Rossshire Development, LLC (hereinafter "Rossshire"). Rossshire was a residential real estate development and renovation company operated by HOUCHINS in, among other places, Sanford, NC. The North Carolina Secretary of State administratively dissolved Rossshire on February 28, 2018.

3.    On or about May 19, 2015 HOUCHINS created Greenstone Ventures, LLC (hereinafter "Greenstone"). Greenstone was a residential real estate development and renovation company operated by HOUCHINS in, among other

1

places, Sanford, NC.    The North Carolina Secretary of State administratively dissolved Greenstone on February 2, 2017.

4.    On or about March 14, 2016 HOUCHINS created Modern South Development, LLC (hereinafter "Modern South").    Modern South was a residential real estate development and renovation company with a principal office location identified as 4000 Blue Ridge Road, Suite 130 in Raleigh.    The North Carolina Secretary of State administratively dissolved Modern South on February 28, 2018.

5.    HOUCHINS, both directly, and through others, solicited individuals to invest money into properties that were to be purchased or renovated through Rossshire, Greenstone, or Modern South (hereinafter collectively the "Development Entities").    The investors that are the subject of this Indictment were not solicited to invest in a common investment fund, but rather into the development or renovation of a specific property.    In exchange for each investment, HOUCHINS, promised to provide a promissory note, secured by a deed of trust, entitling the investor to foreclose on the property being developed in the event of default on the note. HOUCHINS told investors that they would make up to an 18 percent return on their investments with him.

6.    N.P. was a real estate closing attorney operating in the Eastern District of North Carolina.    HOUCHINS regularly utilized the services of N.P. for real estate purchases and sales involving the Development Entities.

2

## COUNTS ONE THROUGH NINE

### THE SCHEME

7.     Beginning at a time unknown, but no later than October 20, 2014 and continuing to March of 2018, in the Eastern District of North Carolina and elsewhere, JOSHUA MATTHEW HOUCHINS, defendant herein, devised and intended to devise a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

### MANNER AND MEANS

8.     Introductory paragraphs 1 through 6 are realleged and incorporated as though fully set forth in this count.

9.     Using the Development Entities, HOUCHINS induced various individuals to invest money into certain residential real estate properties.   The individuals who were induced to invest money, each of which are identified below, are collectively referred to in this Indictment as the "Investor Victims."   The properties which HOUCHINS used to induce the Investor Victims to give HOUCHINS their money, each of which are identified below, are referred to collectively as the "Subject Properties."

10.    To induce Investor Victims to invest with HOUCHINS and the Development Entities on the Subject Properties, HOUCHINS, both directly and indirectly, made various false representations and promises, such as:

(a)    Investor Victim funds would be "put to work" on the property that was the subject of the investment;

3

(b)     The Investor Victims' investments would be secured.   Each investment was supposed to be secured by a deed of trust on the property which was the subject of each investment, and such deeds of trust were supposed to be filed with the register of deeds.

11.     In fact, as HOUCHINS then and there knew, HOUCHINS did not put all of the investor funds to work on the property on which the investor was solicited to invest.   In fact, HOUCHINS regularly used investor funds on other properties, or on personal expenses.

12.     Additionally, as HOUCHINS then and there knew, the investor promissory notes were not, in fact, secured by a deed of trust recorded by the register of deeds.   In some instances, HOUCHINS did not even own the property that was the subject of the investment, and as such, could not truthfully grant a deed of trust to the investor.

13.     After HOUCHINS diverted investor money away from the property on which the funds were supposed to be spent, HOUCHINS failed to develop and sell the properties, as he represented he would.

14.     HOUCHINS then defaulted on the notes by failing to pay investors their promised returns.

15.     The investors were unable to foreclose upon the investment properties because HOUCHINS had not secured the promissory notes with a deed of trust filed with the register of deeds, as promised.

16.     Since HOUCHINS did not pay the investors their promised returns, and

4

the investors were unable to foreclose on the investment properties, the investors suffered financial losses.

**8117 Rhudy Place, Raleigh, NC**
*Investors A.F. and L.F*

17.    In or about June of 2015, HOUCHINS solicited A.F. and L.F. to invest money into the renovation of 8117 Rhudy Place in Raleigh, NC by making the promises identified in Paragraph 10, above.    HOUCHINS never informed A.F. and L.F. that there would be any other investors on the property.

18.    In or about July of 2015 HOUCHINS, outside the presence of his closing attorney, N.P., created a promissory note in which Rossshire promised to repay A.F. and L.F. their investment funds, with interest, in six months.    As promised during the solicitation of A.F. and L.F., the promissory note stated that it "will be secured by a Deed of Trust on 8117 Rhudy Lane, Raleigh NC that is a lien upon the property therein described."

19.    Also in or about July of 2015 HOUCHINS, outside the presence of his closing attorney, N.P., created a deed of trust which represented that Rossshire owned 8117 Rhudy Place.    The deed of trust purported to give A.F. and L.F. the right to foreclose upon 8117 Rhudy Place in the event of Rosshire's default on the promissory note.

20.    On or about July 26, 2015, HOUCHINS delivered the promissory note, and a deed of trust, to A.F. and L.F.

21.    In reliance upon HOUCHINS's promises, on or about July 30, 2015, A.F.

5

and L.F. wired $325,900 to Rossshire.

22. Despite false representations to the contrary in the deed of trust, at the time that A.F. and L.F. wired their investment monies for the development of 8117 Rhudy Place, neither Houchins, nor Rossshire, nor any of the Development Entities, owned 8117 Rhudy Place.

23. Additionally, HOUCHINS did not file the deed of trust with the register of deeds, despite promises to A.F. and L.F. that he would. By failing to file the deed of trust with the register of deeds, HOUCHINS failed to protect A.F. and L.F.'s secured interest in 8117 Rhudy Place against future liens on the property.

24. In or about August of 2015, HOUCHINS solicited additional investors to invest monies into 8117 Rhudy Place. HOUCHINS did not inform A.F. and L.F. of these additional investors.

25. During this same time, HOUCHINS utilized the services of his closing attorney, N.P. to conduct the purchase of 8117 Rhudy Place. In doing so, HOUCHINS concealed from N.P. the fact that he had already collected $325,900 from A.F. and L.F., and that he had already given them a promissory note and deed of trust to protect their interest in 8117 Rhudy Place.

26. Without knowledge of A.F. and L.F.'s interest, N.P. created promissory notes and deeds of trust giving multiple other investors a secured interest in 8117 Rhudy Place. Likewise, N.P. filed these deeds of trust with the register of deeds.

27. HOUCHINS failed to pay A.F. and L.F. the funds due under the

6

promissory note.

28.    Based upon HOUCHINS's failure to record the A.F. and L.F. deed of trust, and his concealment of the same from N.P., A.F and L.F. were unable to foreclose upon 8117 Rhudy Place.

### 3226 Oak Grove Circle, Raleigh, NC
*Investors J.K., R.B., S.A. and A.A.*

29.    In or about December of 2015, HOUCHINS caused Rossshire to purchase 3226 Oak Grove Circle, using funds from two investors.   HOUCHINS utilized the services of N.P. to close the purchase.   N.P. drafted and filed deeds of trust protecting the secured interests of these investors.

30.    In or about January of 2016, HOUCHINS solicited J.K. to invest money into the renovation of 3226 Oak Grove Circle in Raleigh, NC by making the promises identified in Paragraph 10, above.

31.    Unlike the purchase transaction for 3226 Oak Grove Circle, which had occurred one month prior, HOUCHINS did not utilize the services of N.P. in connection with J.K.'s investment.   Instead, HOUCHINS created and delivered to J.K. a deed of trust which purported to secure J.K.'s investment in 3226 Oak Grove Circle.   The deed of trust falsely represented that Rossshire owned the property "free and clear of all encumbrances."   In fact, at the time of J.K.'s investment, 3226 Oak Grove Circle was already encumbered by notes and deeds of trust issued to prior investors.

32.    Additionally, HOUCHINS created a promissory note in which Rossshire

7

promised to repay J.K. his investment funds, with interest, in six months. The promissory note, prepared by HOUCHINS, falsely represented that the investment "is secured by a Deed of Trust recorded in the Wake County Registry on the property commonly known as 3226 Oak Grove Circle, Raleigh, NC 27607, that is a lien on the property described therein." In fact, HOUCHINS did not file the deed of trust as promised.

33.     On or about January 13, 2016, HOUCHINS delivered the promissory note, and a deed of trust, to J.K.

34.     In reliance upon HOUCHINS's promises, on or about January 13, 2016, J.K. wired $70,000 to Rossshire.

35.     After receiving J.K.'s investment funds, HOUCHINS did not use the funds on the development of 3226 Oak Grove Circle, as he had promised. Instead, the majority of the funds were spent repaying prior investors on other properties, developing other properties, and on personal expenses.

36.     In or about the first week of April 2016, HOUCHINS solicited R.B. to invest monies into 3226 Oak Grove Circle. HOUCHINS did not inform his attorney, N.P., or his prior investors, of this additional investment into 3226 Oak Grove Circle.

37.     HOUCHINS created a deed of trust which purported to secure R.B.'s investment in 3226 Oak Grove Circle. The deed of trust falsely represented that Greenstone owned the property "free and clear of all encumbrances." In fact, Greenstone did not own 3226 Oak Grove Circle. Instead, the property was owned by

8

Rossshire, and was encumbered with loans to prior investors.

38. Additionally, HOUCHINS created a promissory note in which Greenstone promised to repay R.B. her investment funds, with interest, in six months. The promissory note, prepared by HOUCHINS, falsely represented that the investment "is secured by a Deed of Trust recorded in the Wake County Registry on the property commonly known as 3226 Oak Grove Circle, Raleigh, NC 27607, that is a lien on the property described therein." In fact, HOUCHINS did not file the deed of trust as promised.

39. On or about April 6, 2016, HOUCHINS delivered the promissory note, and a deed of trust, to R.B.

40. In reliance upon HOUCHINS's promises, on or about April 6, 2016, R.B. wrote a $20,000 check to Greenstone.

41. After receiving R.B.'s investment funds, HOUCHINS did not use the funds on the development of 3226 Oak Grove Circle, as he had promised. Instead, the majority of the funds were spent repaying contractors for prior work on other properties, and on personal expenses.

42. In or about September of 2016, HOUCHINS solicited S.A. and A.A. to invest monies into 3226 Oak Grove Circle. HOUCHINS did not inform his attorney, N.P., or his prior investors, of this additional investment into 3226 Oak Grove Circle.

43. HOUCHINS created a deed of trust which purported to secure S.A. and A.A.'s investment in 3226 Oak Grove Circle. The deed of trust falsely represented

that Greenstone owned the property "free and clear of all encumbrances." In fact, Greenstone did not own 3226 Oak Grove Circle. Instead, the property was owned by Rossshire, and was encumbered with loans to prior investors.

44. Additionally, HOUCHINS created a promissory note in which Greenstone promised to repay S.A. and A.A. their investment funds, with interest, in six months. The promissory note, prepared by HOUCHINS, falsely represented that the investment "is secured by a Deed of Trust recorded in the Wake County Registry on the property commonly known as 3226 Oak Grove Circle, Raleigh, NC 27607, that is a lien on the property described therein." In fact, HOUCHINS did not file the deed of trust as promised.

45. On or about September 2, 2016, HOUCHINS delivered the promissory note, and a deed of trust, to S.A. and A.A.

46. In reliance upon HOUCHINS's promises, on or about September 2, 2016, S.A. and A.A. wired $150,000 to Greenstone.

47. After receiving S.A. and A.A.'s investment funds, HOUCHINS did not use the funds on the development of 3226 Oak Grove Circle, as he had promised. Instead, the majority of the funds were spent repaying contractors for prior work on other properties, and on personal expenses.

48. HOUCHINS failed to pay J.K., R.B., S.A., and A.A. the funds due under the promissory notes.

49. Based upon HOUCHINS's failure to record the deeds of trust he

10

prepared for the benefit of J.K., R.B., S.A., and A.A., they were unable to foreclose upon 3226 Oak Grove Circle, resulting in financial losses to the investors.

**0 N. Boundary Street, Chapel Hill, NC**
*Investor S.R.*

50.     In our about April of 2016, HOUCHINS solicited S.R. to invest money into the development of 0 N. Boundary Street, Chapel Hill, NC, by making the promises identified in Paragraph 10, above.

51.     HOUCHINS did not utilize the services of N.P. in connection with S.R.'s investment. Instead, HOUCHINS created and delivered to S.R. a deed of trust which purported to secure S.R.'s investment in 0 N. Boundary Street. The deed of trust falsely represented that Greenstone owned the property "free and clear of all encumbrances." In fact, at the time of S.R.'s investment, Greenstone did not hold title to 0 N. Boundary Street.

52.     Additionally, HOUCHINS created a promissory note in which Greenstone promised to repay S.R. her investment funds, with interest, in eight months. The promissory note, prepared by HOUCHINS, falsely represented that the investment "is secured by a Deed of Trust recorded in the Wake County Registry on the property commonly known as 0 Boundary Street, Chapel Hill, NC, that is a First lien upon the property therein described." In fact, HOUCHINS did not file the deed of trust as promised.

53.     On or about April 22, 2016, HOUCHINS delivered the promissory note, and a deed of trust, to S.R.

11

54.    In reliance upon HOUCHINS's promises, on or about April 22, 2016, S.R. delivered a check in the amount of $425,000 to Greenstone.

55.    After receiving S.R.'s investment funds, HOUCHINS did not use the funds on the development of 0 N. Boundary Street, as he had promised.    Instead, the majority of the funds were spent repaying prior investors on other properties, paying for prior work on other properties, paying personal expenses.

## 1841 Wilshire Avenue, Raleigh, NC
### *Investors J.K. and R.B.*

56.    In or about March of 2016, HOUCHINS caused Greenstone to purchase 1841 Wilshire Avenue, Raleigh, NC, using funds from an investor.    HOUCHINS utilized the services of N.P. to close the purchase.    N.P. drafted and filed deeds of trust protecting the secured interests of the investor.

57.    In our about May of 2016, HOUCHINS solicited J.K. to invest money into the development of 1841 Wilshire Avenue, Raleigh, NC, by making the promises identified in Paragraph 10, above.

58.    Unlike the purchase transaction for 1841 Wilshire Avenue, Raleigh, NC, which had occurred two months prior, HOUCHINS did not utilize the services of N.P. in connection with J.K.'s investment.    Instead, HOUCHINS created and delivered to J.K. a deed of trust which purported to secure J.K.'s investment in 1841 Wilshire Avenue, Raleigh, NC.    The deed of trust falsely represented that Greenstone owned the property "free and clear of all encumbrances."    In fact, at the time of J.K.'s investment, 1841 Wilshire Avenue, Raleigh, NC was already encumbered by a note

12

and deed of trust issued to a prior investor.

59. Additionally, HOUCHINS created a promissory note in which Greenstone promised to repay J.K. his investment funds, with interest, in six months. The promissory note, prepared by HOUCHINS, falsely represented that the investment "is secured by a Deed of Trust recorded in the Wake County Registry on the property commonly known as 1841 Wilshire Avenue, Raleigh, NC, that is a lien on the property described therein." In fact, HOUCHINS did not file the deed of trust as promised.

60. On or about May 8, 2016, HOUCHINS delivered the promissory note, and a deed of trust, to J.K.

61. In reliance upon HOUCHINS's promises, on or about May 10, 2016, J.K. wired $31,000 to Rossshire.

62. After receiving J.K.'s investment funds, HOUCHINS did not use the funds on the development of 1841 Wilshire Avenue, Raleigh, NC, as he had promised. Instead, the majority of the funds were spent on personal expenses and payment of contractors for prior work on other properties.

63. In or about June of 2016, HOUCHINS solicited R.B. to invest monies into 1841 Wilshire Avenue, Raleigh, NC. HOUCHINS did not inform his attorney, N.P., or his prior investors, of this additional investment into 1841 Wilshire Avenue, Raleigh, NC.

64. HOUCHINS created a deed of trust which purported to secure R.B.'s

13

investment in 1841 Wilshire Avenue, Raleigh, NC. The deed of trust falsely represented that Greenstone owned the property "free and clear of all encumbrances." In fact, at the time of J.K.'s investment, 1841 Wilshire Avenue, Raleigh, NC was already encumbered by a note and deed of trust issued to a prior investor.

65. Additionally, HOUCHINS created a promissory note in which Greenstone promised to repay R.B. her investment funds, with interest, in six months. The promissory note, prepared by HOUCHINS, falsely represented that the investment "is secured by a Deed of Trust recorded in the Wake County Registry on the property commonly known as 1841 Wilshire Avenue, Raleigh, NC 27607, that is a lien on the property described therein." In fact, HOUCHINS did not file the deed of trust as promised.

66. On or about June 20, 2016, HOUCHINS delivered the promissory note, and a deed of trust, to R.B.

67. In reliance upon HOUCHINS's promises, on or about June 20, 2016, R.B. delivered a $20,000 check to Greenstone.

68. After receiving R.B.'s investment funds, HOUCHINS did not use the funds on the development of 1841 Wilshire Avenue, as he had promised. Instead, the majority of the funds were spent repaying contractors for prior work on other properties, and on personal expenses.

69. HOUCHINS failed to pay J.K. and R.B. the funds due under the promissory notes.

14

70.     Based upon HOUCHINS's failure to record the deeds of trust he prepared for the benefit of J.K. and R.B., they were unable to foreclose upon 1841 Wilshire Avenue, resulting in financial losses to the investors.

## "The Colonies" Tract 4, Lot 7, Sanford, NC
### *Investor R.B.*

71.     In or about March of 2016, HOUCHINS, through Greenstone, attempted to purchase Tract 4, Lot 7 within a subdivision known as "The Colonies" in Sanford, North Carolina.   This investment is referred to herein as "Lot 7 of The Colonies."

72.     To carry out the purchase and closing of Lot 7 of the Colonies, HOUCHINS utilized the services of N.P.   The transaction was scheduled to close on or about August 9, 2016.   Ultimately, the transaction was not consummated, and title to Lot 7 did not pass to Greenstone.

73.     Notwithstanding HOUCHINS's failure to purchase Lot 7 of the Colonies, HOUCHINS, through Greenstone, solicited R.B. to buy a completed townhome on the property.

74.     To carry out the investment, HOUCHINS created and delivered to R.B. a "Development Agreement" in which, in exchange for a $25,000 deposit from R.B., Greenstone promised to sell R.B. for the price of $85,000, a completed townhome on Lot 7 of the Colonies.

75.     As noted, however, HOUCHINS did not own Lot 7, and could not carry out any such development of the townhome.   HOUCHINS did not inform R.B. of this fact.   Likewise, HOUCHINS did not utilize the services of N.P. to carry out R.B.'s

15

investment.

76.     On or about August 19, 2016, R.B. delivered a check in the amount of $25,000 to Greenstone.

77.     After receiving R.B.'s investment funds, HOUCHINS did not use the funds on either the purchase or development of Lot 7 of The Colonies.     Instead, the majority of the funds were spent paying for prior work on other properties, and paying for personal expenses.

## 513 Sasser Street, Raleigh, N.C.
### *Investor S.R.*

78.     In or about August of 2016, HOUCHINS, through Greenstone, attempted to purchase 513 and 515 Sasser Street in Raleigh, North Carolina.

79.     To carry out the purchase, HOUCHINS utilized the services of N.P. Ultimately, however, the transaction was not consummated, and title to 513 and 515 Sasser Street did not pass to Greenstone.

80.     In or about January of 2017, HOUCHINS, through Greenstone, solicited S.R. to invest in the development of 513 Sasser Street.

81.     As noted, however, HOUCHINS did not own 513 Sasser, and could not carry out any such development of the residence.     HOUCHINS did not inform S.R. of this fact.     Likewise, HOUCHINS did not utilize the services of N.P. to carry out S.R.'s investment.

82.     Additionally, HOUCHINS created a promissory note in which Greenstone promised to repay S.R. her investment funds, with interest, in six

16

months. The promissory note, prepared by HOUCHINS, falsely represented that the investment "is secured by a Deed of Trust recorded in the Wake County Registry on the property commonly known as 513 Sasser Street, Raleigh, NC 27607, that is a lien on the property therein described." In fact, HOUCHINS did not file the deed of trust as promised.

83.    On or about January 6, 2017, HOUCHINS delivered the promissory note to S.R.

84.    On or about January 6, 2017, S.R. delivered a check in the amount of $450,750 to Greenstone.

85.    After receiving S.R.'s investment funds, HOUCHINS did not use the funds on either the purchase or development of 513 Sasser Street. Instead, the majority of the funds were spent paying for prior work on other properties, and paying for personal expenses.

## USE OF THE WIRES

86.    On or about each of the dates set forth below, in the Eastern District of North Carolina and elsewhere, the defendant, JOSHUA MATTHEW HOUCHINS, for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count:

| COUNT | DATE | WIRE |
|-------|------|------|
| 1 | 7/30/2015 | Interstate wire transfer of $325,900 from A.F. and L.F. bank account in Minnesota to Rossshire bank account *4495 in North Carolina. |

17

| | | |
|---|---|---|
| 2 | 1/13/2016 | Interstate wire transfer of $70,000 from J.K. Bank of America account, bank servers located in Texas, Arizona, and Delaware, to Rossshire bank account *4495 in North Carolina. |
| 3 | 4/6/2016 | Electronic wire transmission from Pinnacle Bank in North Carolina to PNC Bank in Pennsylvania to clear $20,000 check that is drawn upon R.B.'s PNC bank account that is deposited to Greenstone bank account *0737 in North Carolina. |
| 4 | 4/22/2016 | Electronic wire transmission from Pinnacle Bank in North Carolina to E*Trade in Virginia to clear $425,000 check drawn upon S.R.'s E*Trade Account that is deposited to Greenstone bank account *0737 in North Carolina. |
| 5 | 5/10/2016 | Electronic wire transmission from Pinnacle Bank in North Carolina to Fedwire in Texas and New Jersey to process $31,000 transfer from J.K.'s bank account and deposited to Rossshire bank account *4495 in North Carolina. |
| 6 | 6/20/2016 | Electronic wire transmission from Pinnacle Bank in North Carolina to Bank of America in Texas, Arizona, and Delaware, to clear $20,000 check drawn upon R.B.'s Bank of America account and deposited to Greenstone bank account *0737 in North Carolina. |
| 7 | 8/19/2016 | Interstate wire transfer of $25,000 from R.B. PNC Bank account located in Pennsylvania, to Greenstone bank account *0588 in North Carolina. |
| 8 | 9/2/2016 | Electronic wire transmission from Pinnacle Bank in North Carolina to Fedwire in Texas and New Jersey to process $150,000 transfer from S.A. and A.A. bank account and deposited to Greenstone bank account *0737 in North Carolina. |
| 9 | 1/6/2017 | Electronic wire transmission from North State Bank, account transactions being processed in New Jersey, to Local Government Federal Credit Union (LGFCU) in North Carolina, to clear $450,700 check from S.R. and deposited to Greenstone bank account *6714 in North Carolina. |

Each entry in the foregoing table constituting a separate violation of Title 18, United States Code, Section 1343.

18

**COUNTS TEN THROUGH TWELVE**

87.    Paragraphs 1 through 86 are realleged and incorporated as though fully set forth in this count.

88.    Between the dates listed in each row of the table below, in the Eastern District of North Carolina and elsewhere, JOSHUA MATTHEW HOUCHINS, defendant herein, knowingly engaged in each of the following monetary transactions involving criminally derived property described below, where the value of the property exceeded $10,000, and said property was derived from the Specified Unlawful Activity (SUA) identified below:

| COUNT | DATE | CRIMINALLY DERIVED PROPERTY | MONETARY TRANSACTION | SUA |
|---|---|---|---|---|
| 10 | 4/28/2016 | $425,000 investment by S.R. into 0 N. Boundary, Chapel Hill, NC | $68,410.71 wire transfer from Greenstone account *0737 at Pinnacle Bank to N.P. trust account *7029 | Wire Fraud, 18 U.S.C. § 1343 |
| 11 | 9/2/2016 | $150,000 investment by S.A. and A.A. into 3226 Oak Grove Circle, Raleigh, NC | $15,000 transfer from Greenstone account *0737 at Pinnacle Bank to HOUCHINS personal account *1899 at Pinnacle Bank | Wire Fraud, 18 U.S.C. § 1343 |
| 12 | 9/6/2016 | $150,000 investment by S.A. and A.A. into 3226 Oak Grove Circle, Raleigh, NC | $13,330 counter withdrawal from Greenstone account *0737 at Pinnacle Bank to | Wire Fraud, 18 U.S.C. § 1343 |

19

| | | | purchase cashier's checks in the amount of $5,000 and $7,830 payable to Lee County Clerk of Court, reference "16CVD732" | |
|---|---|---|---|---|

Each row of the foregoing table constituting a separate violation of Title 18, United States Code, Section 1957.

### FORFEITURE NOTICE

The defendant is given notice that all of the defendant's interest in all property specified herein is subject to forfeiture.

Upon conviction of an offense set forth in Counts One through Twelve of the Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7) and Title 18, United States Code, Section 981 (a)(1)(C), the latter as made applicable by 28 U.S.C. § 2641(c), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

The forfeitable property includes, but is not limited to the following:

A. The total gross proceeds of the foregoing offense personally obtained by the defendant in the amount of at least $1,517,600.00.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant --

(1)     cannot be located upon the exercise of due diligence;

20

(2)     has been transferred or sold to, or deposited with, a third party;

(3)     has been placed beyond the jurisdiction of the court;

(4)     has been substantially diminished in value; or

(5)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

A TRUE BILL

REDACTED VERSION
Pursuant to the E-Government Act and the
federal rules, the unredacted version of
this document has been filed under seal.
Foreperson

Date:    5/12/2020

ROBERT J. HIGDON, JR.
United States Attorney

BY: WILLIAM M. GILMORE
Assistant United States Attorney

21